We are ready to hear arguments in our next case, Mglej v. Garfield County. If it pleases the Court, I would like to reserve four minutes for rebuttal. You'll just have to watch your own clock. I understand that. Thank you. I appreciate that. Good morning, Justices. Good morning. If this Court looks at a reasonable officer standing in the shoes of Deputy Gardner, based upon what the trial court found, it needs to find qualified immunity in this instance. Now, the U.S. Supreme Court in Brousseau v. Hagen said that you need to look at the specific context, not a proposition. You need to look actually at the particular acts of the defendant in the case at hand. That is not what this trial court did. In fact, when it talked about qualified immunity, it said that you need probable cause to arrest, and therefore you do not have qualified immunity. The Court found that because there was no probable cause in his determination, it denied all three claims on summary judgment that we're going to address here in a minute. It's important to note that Gardner had arguable probable cause based upon the lack of clarity of Utah law and the definite clarity of Fourth Amendment law. Now, we have put forward law on all three of these points that show that it is actually not unconstitutional, what my client did. We do not have to show that. It is incumbent upon the plaintiff to show that there is law saying that this is clearly established, contrary to my client's action. U.S. v. Santana, U.S. Supreme Court case, it says the front porch is a public place. It didn't talk about whether you could hear or not. Yeah, it talked about that, but it said it made the categorization that this porch was a public place. There's no case law that says the hard-packed dirt area in front of a rental trailer is not a public place, and that's the key in this situation. I think the Court had it flipped around like we had to prove something. The other thing is that the plaintiffs bring up is that they argue, well, it's- about what this hard-packed ground was. I mean, was it part of a road into and out of the trailer park, or was it a place for parking vehicles for people that lived in the trailer park? Was there any description of that other than the hard-packed dirt road? Not dirt road, hard-packed dirt area outside. I know there was some lawn chairs and a fire pit. Correct. So was it kind of in the ambiance of a yard, or what was it? The Court's finding was it was a hard-packed driveway. We argued that it was a parking lot. It was all part of the same thing. Was the driveway as in a personal driveway where you go off the road and you go into a private driveway into a garage? I mean, is there anything more than that? There was a road that took you to where that trailer was, and then there was a broad area. There was an aerial that was actually part of the record that showed a substantial amount of property, of area there, and there was showed a bunch of cars parked. That was all in the trial court record where there was different vehicles that were actually parked and different trailers and things that were actually parked there. And so my client said it was a parking lot. We're fine with whatever you call it because I think it's still not part of the curtilage even, according to U.S. v. Larson. And if the front porch is not part of the curtilage, if a front porch is a public place. Well, does it matter if it's a public place or not if we look at whether or not it was reasonable for the officer to ask for his name? If he already knew his name? Well, let me address that in a couple of ways. First of all, he asked for his name and address. He asked for some other things. The Fourth Amendment completely allows him to do so. Interestingly, the statutes. But there was allegation by the plaintiff that the officer knew his name. There is that allegation. And, in fact, went to the door of this trailer and asked for him by name. Right. I would say, one, he doesn't necessarily know how to spell the name. Two, he doesn't know his address except for he knows that he's from out of state. That was also part of the record. And that he knows that he is no less than either the potential perpetrator of a crime or at least a material witness at this point. But he's entitled to ask for that information whether he knew it or not. Now, it was a week before this alleged encounter happened. Now, it's interesting because if you look at the three Utah statutes that work together. He was entitled to ask for that information, meaning more than just the name? Yes. Yes. And you're looking at the Utah statute to get there? Or where do we look? So the Utah statutes, there's three of them. And two of them actually say that they use the word identity of a person. Two of the statutes. The one says name that says identity also. But the third statute that he actually cited actually says name, address, and a brief description of what he was doing, basically. And that's why I'm really a little bit perplexed that the judge just said he could only ask for his name. Because that's simply not true in the statute. And certainly if somebody's from out of state, they're going to want to know their address. And I think it's fair that you want to know how to spell their name. You want to know some basic information. What was the basis for the circumstances justifying the alleged stop? Sure. He got the call from dispatch. And first of all, let me say this. That reasonable suspicion of his actions was never argued in the lower court at all. It was never raised by the plaintiff. And the judge raised a question about it, and I responded. The judge's questions were whether there was probable cause to arrest for that. And you said it was never raised. Did you raise it and say there was a stop? No, I said that it was assumed that actually there was a stop and there was reasonable suspicion. You argued there was reasonable suspicion. Yes. No one disputed that. No. They only disputed whether there was probable cause. Right. And in the judge's ruling, it only talks about these information of why this officer didn't do more of an investigation. He's talking about that in the context of whether there's probable cause to arrest for the money being missing in the till. And so my client got the call from dispatch. Secondly, he got what he called then the store. So he found out that this person had been loitering, which sometimes is a crime in and of itself, that he made the clerk feel uncomfortable by the comments that he was making. She went to the restroom and came right back and found $20 missing from the till, and he was there. And she believed that he had probably taken that money. That's the information. I believe that's reasonable suspicion. It's a pretty low standard reasonable suspicion. That gives him the authority to go and talk to this Mr. McGlay at that time. And you argued that and there was no dispute? No. Okay. No. And there was a question, one question from the judge, one, about the reasonable suspicion, and I articulated just what I said. Secondly, the plaintiffs in their appellate brief also agree with exactly what I just now said as to the information that he had, that the officer had at that time. But what I think is important is the Mossack case versus Albuquerque, the 10th Circuit case from 2015. The statute did not allow to ask for an ID, but they arrested him because he didn't have his ID. Now, it's interesting because he got qualified immunity on that case, and that's not a lot dissimilar here. Here we have Deputy Gardner asking for his name and address and the date of birth and his ID. The Fourth Amendment absolutely allows that. Now, the other thing that's interesting, I cited to Oliver versus Woods from a 2000 10th Circuit case. Now, that case talked about the same statute except for at that time it didn't give the authority to arrest. It did in 2008, and this happened in 2011. But this is a quote from Oliver versus Woods. It said because he refused to present his identification, he violated an order, a valid order given by the officer. It doesn't say he refused to give his name. So here's a 10th Circuit case that's waived in front of my client that says you can do this, you can do this. And, again, it's an objective standard. And which of the Utah statutes are you referring to? Yes. There's three of them. Right. And so the one that they're talking about in Oliver versus Woods is Utah Code 77-7-15 that we've cited. The other two, 77-724 and 76-8-301, those all work together. And I would also say that just like in the Mosek versus Albuquerque case, they said that it's not clearly determined what it means to get someone's identification. These two statutes say that if you fail to disclose identity, so does that mean you fail to disclose a license like in the Mosek case? It's not clear, and that's my point here in this case. Also, there was a case from the 10th Circuit that was decided in 2011, Cook versus City of Dell City. And this is a new one that I can supplement. But it says there's no right to refuse to answer questions for a Terry stop. And I know it's not exactly the same question here, but it does, again. Right. It's not the same fact pattern here. No. We're talking about whether or not he refused to give his name. Correct. Name and address, actually. We argued all the time that it was name and address, and he asked for his name, address, and identification. And the trial court seemed to take the position that we couldn't ask him for, that my client couldn't ask him for anything else. The Fourth Amendment does not constrict an officer in that regard when they're conducting an investigation, as he was. Is the question really what the Fourth Amendment restricts or what the Utah statute permits? It's both, because they're arguing that he violated the Fourth Amendment. That's their claim in this case. The Utah statute is unclear. And it's just as the same as the Mosek versus Albuquerque case. That did not say you could ask for that identification. And yet they still found qualified immunity, this court. I'd like to move on to the handcuff issue, because, again, the court said because there was no probable cause, there was therefore any force used was excessive. That's absolutely incorrect by this circuit. Even if we assume probable cause, wasn't there excessive force? No. And the reason being is Fisher versus the city of Las Cruces said that just about any time you arrest someone or there's a threat to public safety, you can use handcuffs. You can use handcuffs. OK. And that's given. We have facts that go beyond that, though, don't we? We have tied handcuffs and we have the plaintiff complaining. And those are his allegations, which we have to accept. Right. And then we have this, I will define it as a circus, trying to get the handcuffs off of this individual. Correct. Two things. One is I would like to point the court, Honorable Judge Briscoe actually ruled in a case that I had back in 2004 that a summons arrest, that's just the person comes to the jail to be booked, that it was valid to use handcuffs in that instance. Right. He's in the jail. We still, it was ruled in that case that it was valid to use them. Secondly, he was in a catch-22 here because my client, he said as soon as he noticed there was redness, he tried to take them off and they malfunctioned and he couldn't. He'd never had that problem before. He was in a catch-22. Does he take them off or does he leave them on and drive two hours to the jail? I think he did the right thing. It was reasonable. That's the important thing. It's objectively reasonable that he tried to take them off. He didn't complain that he was taking them off. Mr. McGlay did not complain that he was taking those off. That's the clear record because he wanted them off also. And so here he's taking that action to do so. There's also several cases, one from the Tenth Circuit, one from the Second Circuit, that actually say negligence can't be even sufficient for a Fourth Amendment violation where a gun accidentally went off. A state versus black versus city of Alamosa was an accidental, the gun accidentally went off. There's another case that was just decided three weeks ago by this, not by this panel, but this court that said it's de minimis in any injury used by using handcuffs. Again, not exactly the same, but here you have a situation. Well, here we have, again, the allegations of the plaintiff, and the plaintiff contends that the injuries were not de minimis and described them. And even, I think, your client conceded that before the cuffs were removed, his hands were turning red. No, no. He saw the emergency of that. No, he tried to take them off as soon as he found that. That's what the judge even found. The judge in the order says he saw them red and he tried to take them off. So that's one issue. So we have injury. I think to talk about this as de minimis is really unfair to the allegations of the plaintiff, which we have to accept here. Sure. That's true. I would say, though, that there's no way he could have foreknown that these handcuffs would malfunction. It had never happened before. Even the sheriff said he'd never seen that happen before. And, again, officers, he's two hours from the jail. He can't call anyone else. He either rides to the jail for two hours or tries to take them off. Therefore, I think the use of handcuffs, if you're arresting, should be always considered valid unless there's some other extenuating circumstance. I just want to quickly say on malicious prosecution, there was a case, Nowitzki v. Wortham. It says you have to have false information in the probable cause statement to show malice. The court cited it, Stonecipher v. Valley, which is a 2014 case, that changed that to say you had to have arguable probable cause to potentially show that malice, before you can get to the malice. That was not the case in 2011. The court should not have relied on that case. Kennedy. What were the facts in Stonecipher, though? Did the facts precede the events here? I, you know, I do not know the answer to that question. I apologize. Because if the court says after this event, in a separate case, the law was clearly established for facts that preceded the facts of this case, then that would be precedent our circuit, our panel would have to accept. That the fact, so you have to look at not when the case was decided so much as when the facts in the case arose in each case. No, I think it's the decision. It's the decision for qualified immunity. When that decision is rendered and published. But if that decision says we're dealing with facts three years earlier, and at that point, three years earlier, this is the law that had been clearly established at that time, then we come on with a later case, which the facts post-date the facts of the first case, but predate the decision of the first case. We're still bound by that case that said, as of the earlier date, the law was clearly established. That's not the way I read qualified immunity. I think there needs to be a case decision on point, or similar to it. I think we've got cases probably both ways. Certainly this way as well. Thank you, counsel. I'm out of time. If it pleases the court, can I have a minute still for my rebuttal afterwards? No. Okay, thank you, Your Honor. I appreciate that. Just thought I would try. Good morning. Good morning. May it please the court. My name is Ben Welch, and I represent Matthew McGlay. We argued in our briefing on this case that this is a relatively straightforward matter from our vantage point, that the trial court found that there were disputed issues of fact, and on that basis it couldn't make a finding of qualified immunity. As you go through the briefing, and even I think sitting through the oral arguments provided by Deputy Gardner's counsel, it's very clear that these facts are in dispute,  But if you go down that path, then we would not have jurisdiction because it's a factual dispute case. But you have, I think, when I look at your brief, you say, okay, fine, there is confusion here, but we will accept the allegations of the plaintiff for the purposes of this appeal. I think we frame it such that the court can address it on the jurisdictional basis alone because it's a disputed issue of fact, or we can tackle it . . . No. That would have been a good way to start. But there are disputed facts, and some might be more favorable to you than to them, like when did he first complain about the pain of the handcuffs? Right. But if we accept your version of the facts,  well before they got to the defendant's home, then don't we have jurisdiction to review whether he's entitled to qualified immunity even on the plaintiff's version of facts? I will defer to the court on that. The court invited us to address the issue of jurisdiction in its February order. We addressed it in that way. Whether the court wants to reach that issue, I think . . . Well, we don't have a choice if we lack jurisdiction. We can't address it. But I thought under our precedent, it's quite proper for us to take the facts in the light most favorable to the plaintiff . . . Right. . . . and decide whether even then there's qualified immunity. Yes. And I think as we go down that road, it becomes very clear the qualified immunity isn't appropriate. So I think it would be fruitful to look at some of those instances. Well, let's take some of these. See what you're pressing. The district court thought it was clear that this was a private place where the . . . that the plaintiff was . . . I'm going to get plaintiff and defendant mixed up the whole time. I'm sorry. That where the plaintiff was asked his name, the plaintiff was in a private place. That seems hard to accept given the Supreme Court's statement in Santana. Are you still pursuing the argument that it was in a private place? Yes. And how is that clearly established law, that it was a private place? Well, it's clear that the curtilage area is protected. And even if you look at Santana and the Larson case that they cite, it becomes clear from the analysis that the court is doing, is that they're saying even though this is arguably curtilage, because this particular version of the curtilage is open to observation and is the vantage point from which the officers are standing, that this wouldn't be the type of curtilage that would be protected. They're not saying that a porch is always not a public place. I thought it said it's a public place for purposes of the Fourth Amendment, is what it says. I thought that was their language. Maybe I'm wrong. My recollection and reading of that case was that under this particular version of the facts as presented, that it wouldn't have been. But I think it's important to note the distinction between the porch in Santana and the porch in this case because, again, there are protected curtilage areas that extend beyond the house. Yes. Okay. So, for instance, if you look at the aerial photo, in Santana we have what appears to be a high-resident or high-volume residential area where the officers were able to see the suspect for whom they already had probable cause to arrest, and so this arises in the context of a warrantless arrest under hot pursuit. Let me stop you because you may be making a good argument that we should determine that it's a private place. But what you have to establish, what you have to show is that it was clearly established law that it was a private place. Sure. And when what you've got is a Supreme Court opinion saying a porch is a public place, you've got a pretty tough burden to show that the facts here are clearly established and the facts here it's a private place. Sure. So just keep that in mind as you respond. Sure. So I would argue that the court is saying that the curtilage is protected, but that the porch in Santana was not curtilage. I would argue that the space here is, and it would have been considered curtilage if the facts are viewed in the light most favorable to my client. Now, again, just referring you to the aerial photo, this is not the kind of porch in a high residential area where a person standing on the sidewalk can clearly see the defendant. This is a situation where we have a main road or the main road and then a private driveway that extends off of that main road. Again, viewing the facts in our favor, it's an eighth of a mile and it swings around the back of the trailer. This is not a trailer park. It's a single trailer, the back of the trailer so that the area in which this interaction took place is really effectively the backyard. It's not the front porch. It's viewable from the street. It's the backyard it's enclosed. And that the encounter took place right at the right at the door. Now, it so happens that this trailer is oriented such that the front door is angled to the backyard, which is why it's referred to as the front door, but it's not angled toward the street. Again, eighth of a mile. No one else is using this space. No one else shares this space. There's furniture there and it's happening immediately in front of the door. It's a private road. Hasn't been dedicated to the public. It's correct. Again, I'm still confused about we're dealing with a statute here, a Utah statute that requires public place. And everybody is. Giving us constitutional definitions of whether porches and curtilage are public or not. But is that a given, or did you both try the case on the proposition that that Utah statute reference to public place should be the same as the constitutional test? No. And I appreciate judge Igbo raising this argument because we brought this up in our briefing. No, it was tried during summary judgment is that this commonsensical approach applied by judge Wattops was correct. They tried to argue, well, officer Gardner or deputy Gardner thought that there was business conducted there. Deputy Gardner alleges that this happened in a parking lot. There was no arguing that this was a fourth amendment protected space that only came up on appeal, which is why in our briefing, we argue they haven't preserved this issue. The parties at the lower court addressed this precisely along the lines that judge Wattops decided it, which is we do a commonsensical approach here and there's varying facts here. So your, your argument is that, that what the constitution might've defined as public place and the cases that have been cited aren't necessarily determinative of what the Utah statute of public place is. Is that, is that your argument? Correct. But our court has said that 77-7-15 codifies the requirements for a Terry investigative stop. Correct. That suggests that it should be looked at in light of Supreme court precedent. But in any event, is there a Utah case that clearly establishes when this part of the land around the house was publicly, then how can it be clearly established? Because it could be clearly established that the stopped it. Well, as far as defining what a public space is. Okay. I think on that particular point that, that we'd have to, yeah, I don't know. I don't know on that one. I think you have a heavy burden there. Well, in that case, then let's get to the, in that case, this is only one of many elements that they would need to show. And I don't want to get. Yes. Yeah. Let's go to other elements. Right. Because we don't need a win on that. Right. So why, why does, so if an officer has been, if someone has identified himself, given his name to an officer once, does the officer never have the right to ask his name again? What's the line? I think that this goes to this. So again, keep in mind, this is a class B misdemeanor punishable up to six months in jail. And I think the legislature was very careful about how they are articulated this statute. But if you want to say that. The way this officer acted was ridiculous. That's one thing. Right. Okay. But that's not the issue before us. And that's. So is it clearly established that if you were told, if this person told you his name at one time, then you can't ask his name a week later,  You may in one circumstance, you might be satisfied with the name, but later on you want to pin down. This is a someone who hasn't been in the community very long. Is it clearly established that you can't ask again? I think the clearly established lot issue is whether there was probable cause to arrest. And that goes to the elements of what the statute actually authorizes the officer to ask. Now, a couple of points. He didn't ask for his name. He asked for him to show ID. That's the key point. We're sort of assuming he asked for his name. That's not what happened. He went to the doorstep, asked him by name because he already knew it. And then even in his own deposition, he admitted he asked for ID. So he never made a lawful demand in the first place. So we can't really talk about can he or can't he, because that's not what happened. Well, there are two issues on lawful demand. The statutory language. There are a couple of statutory provisions. Right. And reconciling them isn't real clear. One says you can ask for identification. Another says you can arrest if they don't give you their name. Am I getting that wrong? Respectfully, yes. Okay. Let me walk you through that. Because I think there's some confusion when we talk about the Mosick case because that statute in New Mexico actually uses language may demand a person's name or identity. The Utah statutes aren't written that way. The Utah statute says, okay, you can do a Terry stop or you can do a stop and you can ask for a person's name, address and an explanation of their actions. It doesn't say you can ask for identity. You can't ask for identification, name, address, explanation of a person's actions. Okay. That ties back into then the failure to identify statute, which says that in order to arrest under this statute, the officer has to issue a demand for the person's name. It says name, not identity, not identification, not ID documents, name. And if the person refuses to disclose their name after that lawful demand has been made, then there's probable cause to arrest. So there's really no confusion about what identification means because identification, that term is not at issue in the statute. And the statute that you're relying on in which it's not identified is which statute is 76 dash eight dash 301.5, which is the charge for which he's ultimately arrested. Failure to disclose identity. Correct. Failure to disclose identity, but the statute defines what that means, right? Yes. The statute goes on to define under A, B, C, D, and E, what the terms of that are. When you say your title asks for name, does it limit how you ask for your name to be provided? I mean, would it be possible,  that I want you to give me your name and I want you to give it to me by a document that I trust. That is, I'm not trusting your verbal statement. My name is Joe Smith. I'm asking only for your name, but I want that answer to be in a trustworthy form, e.g. produce a driver's license or something. I don't think that the, the officer can arrest under this statute by framing it that way. Isn't it still just asking for name? Well, he's asking for more than a name. Maybe not. He's just asking for a particular way to answer the question. What was your name? I understand. But the statute doesn't authorize him to do that. Statute does not. I mean, I'm just speculating on this. I don't know that. I mean, I don't, I'm just asking the question. I'm not making a declarative statement, but it does seem to me, if you say, what is your name, that there are various ways you might want that answered. But you say there's no, nothing that addresses that possibility. I think if you're arresting under the statute, you're limited to asking for the name. And if you're going to arrest under the statute, you can only arrest if the person refuses to disclose their name. It does not authorize an officer to arrest for failure to provide a document in support of that. This is just the plain language of the statute. And so the officer may want that information. Clearly, this officer wanted that information. But the statute under which he allegedly arrested Mr. McClay doesn't permit him to do that. And again, I think that it also needs to be borne in mind that from our vantage point and the evidence that we present, that the officer wasn't even going through this analysis at the time that the exchange took place. That he was going through the analysis of did this person steal? And it wasn't until after the word came, it wasn't until after they got to the jail that the officer says, I'm sure I'll find something. Let me go check in the book. That's the perspective that this court has to review it on, is that not that he was doing the sort of mental gymnastics, what can I ask for,  That's not the version of the facts that's before the court. But we look at not what an individual officer's subjective motivation was. We ask for what a reasonable officer's objective view of things would be. So the case law, I would defer the court to the languages articulated in Smedley versus Malcolm, which is a Tenth Circuit opinion, and describes and defines probable causes, arguable probable cause exists where a reasonable police officer in the same circumstances, and possessing the same knowledge as the officer in question. Yeah, yes. So that doesn't mean that, No, it's the same knowledge. It's the same information. But it doesn't ask what does this officer really believe? I think it presupposes that he has to have knowledge of the statute under which he's arresting him. Otherwise, how can he do the probable cause analysis? Because if he only, he doesn't get the benefit of saying, I know the facts that the officer knew, but I get to have an idealized version of the law that this officer didn't clearly have. He didn't know the law. He knew the facts. So I can't read into that. Otherwise, it leads to this. That's a very interesting argument. And I understand the argument now as you articulated it. Final word on this. Because if we don't do it that way, Judge Ebel, what we get is this ridiculous result where the officer knows, potentially in his consciousness, of facts that might give rise to a crime of which he has no knowledge about. And he's driving on his way to the jail, and he doesn't know what the law is. But yet somehow he gets the benefit of basically having this person under arrest for a whole hour, not even knowing what he's arresting him for. He arrested him because he didn't give him his name. Isn't that what caused the arrest? He arrested him because he didn't give him his ID. Well, he arrested him because he thought he had him on theft, and later when he got to jail, he arrested him. He came up with that story. We have your argument. Thank you. Do you have any questions? Thank you. Thank you. Case is submitted. We appreciate your arguments this morning.